**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JONAH GERMANY,                          :        Civil No. 3:20-cv-651
                                        :
                    Plaintiff           :        (Judge Mariani)
                                        :
          v.                            :
                                        :
GREGORY BRIGGS, *et al.*,               :
                                        :
                    Defendants          :

**MEMORANDUM**

Plaintiff Jonah Germany ("Germany"), an inmate who was housed at all relevant

times at the Dauphin County Prison, in Harrisburg, Pennsylvania, initiated this civil rights

action pursuant to 42 U.S.C. § 1983.  (Doc. 10).  Named as Defendants are Gregory Briggs,

Warden of the Dauphin County Prison, and Thomas J. Weber, Esquire,[1] Chief Executive

Officer of PrimeCare Medical, Inc.  Presently before the Court are two Rule 12(b) motions

(Docs. 19, 21) to dismiss by Defendant Weber and Defendant Briggs, respectively.  For the

reasons set forth below, the Court will grant each pending motion.

## I.    Allegations of the Complaint

At all relevant times, Germany was housed at the Dauphin County Prison as a

pretrial detainee.  (Doc. 10 ¶ 23).

---

[1]   Incorrectly identified in the complaint as Mike Bond.

On October 14, 2019, at approximately 11:30 a.m., Germany was walking to the shower when he slipped and fell on water, injuring his right knee, neck, and head. (*Id.* at ¶ 1). Germany alleges that he was momentarily knocked unconscious. (*Id.*). A correctional officer called the medical department and staff arrived to place Germany in a neck brace. (*Id.* at ¶¶ 2, 3). Germany alleges that he overheard a staff member telling other officers that the shower and air conditioner had been leaking for months. (*Id.* at ¶ 2). Germany contends that it is "common knowledge" that the showers and air conditioner leak and there should have been a caution sign in the area where he fell. (*Id.* at ¶¶ 1, 19).

Germany was transported to an outside hospital and underwent a series of tests and was provided pain medication. (*Id.* at ¶ 4). The doctors allegedly informed Germany that they believed he suffered muscle damage and that he "should recover." (*Id.* at ¶ 5). They advised him to alert a prison official if he experienced any adverse symptoms. (*Id.*). Germany was provided crutches and was informed that the prison doctor would prescribe pain medication. (*Id.* at ¶ 6). Germany returned to the prison around 5:00 p.m. and was allegedly placed in an unsanitary cell and was provided supplies to clean the cell. (*Id.* at ¶¶ 7, 22).

On October 15, 2019, Germany was prescribed Tylenol and a muscle rub. (*Id.* at ¶ 9). Germany asserts that he told a nurse that he should be housed on the medical unit, and he felt that he was being punished due to his injuries. (*Id.* at ¶ 10). The nurse allegedly

responded that the prison was overcrowded and advised Germany to file a grievance related to his complaints. (*Id.* at ¶ 11).

Germany also alleges that he was denied his one-hour recreation and exercise, denied the ability to buy items from the commissary, denied shaving supplies, denied fresh linens and a clean uniform, and denied access to the law library. (*Id.* at ¶¶ 12, 21).

On October 16, 2019, at approximately 11:45 p.m., Germany alleges that he was forced to shower without a safety railing or chair, causing him to fall and injure his back, head, and neck. (*Id.* at ¶¶ 13, 14). A nurse arrived and informed Germany that he should not have used his crutches in the shower, and he should have been given baths or a shower seat. (*Id.* at ¶ 15). Germany was placed in a neck brace and transported to an outside hospital. (*Id.*). At the hospital, Germany underwent numerous tests and was given a shot of Remedol for pain. (*Id.* at ¶ 16). A doctor allegedly told Germany that he may have suffered a concussion, that he should advise a prison official if he suffers any adverse effects, and that the prison doctor would prescribe pain medication. (*Id.* at ¶ 17). On October 17, 2019, at 6:00 a.m., Germany returned to the prison and was provided pain medication at night pill call. (*Id.* at ¶ 18).

## II.    Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must

aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

4

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III.   Motion to Dismiss by Defendant Briggs

### A.   Lack of Personal Involvement

In order to state an actionable civil rights claim, a plaintiff must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1141-42 (3d Cir. 1990). Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be

predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d

347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs. .

. . Personal involvement can be shown through allegations of personal direction or of actual

knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423

U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003).  Such allegations,

however, must be made with appropriate particularity in that a complaint must allege the

particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354;

*Rode*, 845 F.2d at 1207-08.  Alleging a mere hypothesis that an individual defendant had

personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to

establish personal involvement. *Rode*, 845 F.2d at 1208.

A review of the complaint confirms that other than being named as a Defendant,

there exist no factual averments relating to Defendant Briggs in the body of the complaint.

(*See* Doc. 10).  Indeed, the only conclusory averment made against Briggs is as follows:

"Defendant Gregory Briggs' involvement is he was Warden of the Dauphin County Prison."

(*Id.* at pp. 2, 6).  Germany fails to identify the particular conduct of this Defendant that

allegedly violated his rights.  For instance, Germany does not provide any basis regarding

how Briggs was deliberately indifferent to his serious medical needs or how Briggs was

involved in the shower incidents, or denial of recreation, exercise, shaving supplies, law

library, laundry, and commissary, or placement in the dirty cell.  This style of pleading is

6

patently inadequate since it fails to allege facts that give rise to a plausible claim for relief. *Hudson v. City of McKeesport*, 244 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case).

A claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. *See Rode*, 845 F.2d at 1207. Additionally, any attempt by Germany to hold Defendant Briggs liable for the actions of his subordinates is essentially an assertion of *respondeat superior* liability which seeks to hold him liable based on his supervisory role. This ground of constitutional liability has been squarely rejected by the courts. *See Rode*, 845 F.2d at 1207.

Nor can Germany impose liability on Defendant Briggs based upon his role in reviewing and responding to grievances. (*See* Doc. 24 ¶ 2). It has long been recognized that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond, to a prisoner's grievance, is insufficient to establish personal involvement in the underlying unconstitutional conduct. *See Rode*, 845 F.2d at 1207-1208 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); *Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right"); *Brooks v. Beard*, 167 F. App'x 923, 925

(3d Cir. 2006) (holding that allegations that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct).

The Court finds that Germany's complaint is bereft of any allegations identifying how Defendant Briggs was personally involved in the alleged constitutional deprivations.[2] Accordingly, Defendant Briggs' motion to dismiss will be granted on this ground. The Court finds that there are also separate and independent flaws with Germany's claims. These deficiencies are discussed below.

## B.     Eighth Amendment Deliberate Indifference Claim[3]

Germany alleges that he slipped and fell on two separate occasions—the first time when walking to the shower and the second time while in the shower—and that he received inadequate medical care for his resultant injuries. (Doc. 10 ¶¶ 1, 13). The Eighth

---

[2]     In his brief in opposition to Defendant's motion to dismiss, Germany argues that Defendant Briggs should have intervened in the alleged violations when Germany filed grievances about the violations. (Doc. 24 ¶ 8). While this appears to raise an Eighth Amendment failure to intervene claim, Germany cannot now raise this claim for the first time in an opposition brief. *See Comm. of Pa., ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1981) (providing that it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss").

[3]     Germany's claims are based on his status as a pretrial detainee. Pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment, not the Cruel and Unusual Punishment Clause of the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). However, the Fourteenth Amendment provides "at least as much protection as does the Eighth Amendment," and in cases involving allegations of inadequate medical care, the Third Circuit Court of Appeals typically reviews both claims using the Eighth Amendment standard. *Gannaway v. Berks Cnty. Prison*, 439 F. App'x 86, 89 n.2 (3d Cir. 2011) (nonprecedential) (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)). Thus, the Court will address Germany's claims pursuant to the Eighth Amendment standard.

Amendment prohibits the infliction of cruel and unusual punishment on prisoners. *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000). In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to establish deliberate indifference to a serious medical need. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is whether the defendant: (1) was subjectively deliberately indifferent (2) to the plaintiff's objectively serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the applicable Eighth Amendment analysis requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Circumstantial evidence can establish subjective knowledge on the part of the defendant if it shows that the excessive risk was so obvious that the official must have known about it. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842). The Third Circuit has found deliberate indifference when a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment

based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197.

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Not every condition is a serious medical need; instead, the serious medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. *See id.*

Additionally, for purposes of Eighth Amendment medical claims, nonmedical staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill*, 372 F.3d at 236. Courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims. *See, e.g.*, *id.* at 236-37 (citing *Durmer*, 991 F.2d at 69).

With respect to Gregory Briggs, a nonmedical Defendant, Germany has failed to establish a viable Eighth Amendment claim.  Defendant Briggs is the Warden of the Dauphin County Prison.  He is not a trained member of the medical staff subject to liability for an Eighth Amendment claim.  Germany has not set forth any allegations that Defendant Briggs provided him with medical care, refused to provide medical care, or prevented him from receiving medical care; nor has he established that Defendant Briggs was aware of or acquiesced in the purported Eighth Amendment violations.  Because Germany was under the regular care of medical experts, this nonmedical Defendant was justified in believing that he was in capable hands.  *See Spruill*, 372 F.3d at 236; *Durmer*, 991 F.2d at 69.  Defendant Briggs' motion to dismiss will be granted on this ground as well.

**C.      Eighth Amendment Conditions of Confinement Claim**

Germany alleges that the denial of recreation and exercise, lack of commissary, denial of shaving supplies, denial of laundry and a clean uniform, denial of access to the law library, and placement in a dirty cell, constituted cruel and unusual punishment in violation of his Eighth Amendment rights.  (Doc. 10 ¶¶ 7, 12, 21).  In order to state an Eighth Amendment conditions of confinement claim, a plaintiff must establish both that he has been denied "the minimal civilized measure of life's necessities" and that defendants had a "sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834.  To violate the Eighth Amendment's prohibition of cruel and unusual punishment, conditions cited by an inmate must be "objectively, sufficiently serious [and] must result in the denial of the minimal

civilized measure of life's necessities." *Id.* at 834 (internal citation and quotation omitted).

Only "extreme deprivations" are sufficient to make out a conditions of confinement claim.

*Hudson v. McMillen*, 503 U.S. 1, 8-9 (1992).  A plaintiff must prove that the deprivation is

sufficiently serious when viewed within the context of "contemporary standards of decency."

*Helling v. McKinney*, 509 U.S. 25, 36 (1993).  Although a combination of confinement

conditions—considered alone constitutionally insufficient—may present an Eighth

Amendment violation, they nevertheless must cumulatively produce "the deprivation of a

single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501

U.S. 294, 304 (1991); *see also Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997)

(identifying the denial of basic human needs as "food, clothing, shelter, sanitation, medical

care and personal safety").  In applying this test, the Supreme Court acknowledges that the

Eighth Amendment does not mandate that prisons be free of discomfort. *Hudson*, 503 U.S.

at 9.

Germany does not specifically allege the amount of times he was denied recreation

and exercise, commissary, shaving supplies, laundry, access to the law library, or placed in

a dirty cell.  In liberally construing his complaint, the Court infers that Germany is alleging

that these denials occurred on a few occasions.  (Doc. 10 ¶¶ 7, 12, 21).  The Court finds

that these few instances do not establish an Eighth Amendment violation. *See Miller v.

Trometter*, Civ. No. 4:11-cv-811, 2012 WL 5933015, at *10 (M.D. Pa. Nov. 27, 2012)

(finding plaintiff's allegations that he was denied breakfast and lunch on six days, showers

on twenty eight occasions during the months of September and October, and exercise thirty four times in September and October was insufficient to support an Eighth Amendment claim). Moreover, Germany does not allege that the denial of exercise threatened his health and, therefore, does not state a constitutional violation. *Id.*; *Gattis v. Phelps*, 344 F. App'x 801, 805 (3d Cir. 2009) (determining that the prisoner was not guaranteed outdoor exercise at all times and the limitation of exercise to three days per week was insufficiently serious to implicate the Eighth Amendment) (internal citation and citing case omitted).

Because Germany has failed to adequately allege that he was deprived of "the minimal civilized measure of life's necessities", these claims will be dismissed. *Wilson*, 501 U.S. at 298; *see also Adderly v. Ferrier*, 419 F. App'x 135, 140 (3d Cir. 2011) (holding that denial of access to clothing, toiletries, legal mail, a pillow, a mattress, and showers for seven days did not "constitute a denial of the 'minimal civilized measures of life's necessities'") (quoting *Williams v. Delo*, 49 F.3d 442, 444-47 (8th Cir. 1995)).

### D.    Qualified Immunity

Even if Germany had stated a colorable constitutional claim, Defendant Briggs, in his individual capacity, is entitled to qualified immunity from these claims for damages. In order to establish a civil rights claim, Germany must show the deprivation of a right secured by the United States Constitution or the laws of the United States. However, government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a

"clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555

U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first).  As stated, the Court finds that Germany failed to set forth any cognizable claims against Defendant Briggs and failed to establish the violation of a constitutional right.  Therefore, Defendant Briggs is protected from liability by qualified immunity.

### E.    Official Capacity Claim

To the extent that Germany has brought suit against Defendant Briggs in his official capacity, a state official sued in his official capacity is not a "person" for purposes of § 1983 when a plaintiff seeks monetary damages, as the Supreme Court has not construed § 1983 as an abrogation of the states' Eleventh Amendment immunity.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63-71 (1989).  *Will* precludes actions for damages against state officials acting in their official capacities.  *Id.* at 63-71   However, the state's immunity is not shared by state officers to the extent that the suit seeks prospective injunctive or declaratory relief or seeks damages from the officers in their individual capacities.  *Ex parte Young*, 209 U.S. 123 (1908); *see also Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635 (2002). Consequently, the Court will dismiss all claims asserted against Defendant Briggs in his official capacity in which Germany seeks monetary damages.

### F.    State Law Claim

Defendant Briggs next argues that, to the extent Germany sets forth a state tort claim, he cannot be held liable pursuant to the Pennsylvania Political Subdivision Tort

Claims Act, ("PSTCA").  (Doc. 22, pp. 23-26).  Under the Political Subdivision Tort Claims

Act, "no local agency shall be liable for any damages on account of injury to a person or

property caused by any act of the local agency or an employee thereof or any other

person."  42 PA. CONS. STAT. ANN. § 8541.  The PSTCA lists eight exceptions that permit

liability on tort claims against local agencies.  42 PA. CONS. STAT. ANN. § 8542(b)

(permitting recovery for acts relating to vehicle liability; care, custody or control of personal

property; real property; trees, traffic controls and street lighting; utility service facilities;

sidewalks; and care, custody or control of animals).  As none of the exceptions to a local

agency's immunity are applicable in this case, Defendant Briggs is shielded from liability on

any state law tort claim.

The PSTCA also provides for immunity of an employee of a local agency.  Section

8454 states that "[a]n employee of a local agency is liable for civil damages on account of

any injury to a person or property caused by acts of the employee which are within the

scope of his office or duties only to the same extent as his employing agency and subject to

the limitations imposed by this subchapter."  42 PA. CONS. STAT. ANN. § 8545.  Therefore,

Defendant Briggs is immune from any state tort claim pursuant to § 8545.

However, immunity for an official does not exist when the "act constituted a crime,

actual fraud, actual malice or willful misconduct."  42 PA. CONS. STAT. ANN. § 8550.  Thus,

the PSTCA extends immunity to negligent acts by employees except those falling into the

eight proscribed categories, but abrogates immunity for individual employees who commit

intentional torts.  *See Hernandez v. York County*, 2007 WL 4198017, *aff'd*, 288 F. App'x 781 (3d Cir. 2008) (finding defendant immune under the PSTCA from the plaintiff's claim of gross negligence).  Additionally, local agencies and employees are immune from medical negligence liability under the PSTCA.  Germany failed to plead any conduct on behalf of Defendant Briggs; thus, the willful misconduct exception to immunity does not apply.

### G.    Claim for Injunctive Relief

Germany sets forth a claim for injunctive relief, requesting that Defendants "[i]mmediately arrange for medical tests and proper medical treatment."  (Doc. 10, p. 6).  The mootness doctrine recognizes that "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot."  *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996).  An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims.  *Abdul-Akbar v. Watson*, 4 F.3d 195, 206-07 (3d Cir. 1993); *see Griffin v. Beard*, 401 F. App'x 715 (3d Cir. 2010) (transfer from SCI-Huntingdon renders inmate injunctive relief claim moot).  Germany is no longer housed at the Dauphin County Prison.  In light of Germany's transfer from the Dauphin County Prison, the institution wherein the allegations related to his claims stem, Germany's request for injunctive relief is now moot.  Moreover, Germany acknowledges that his request for injunctive relief is moot.  (Doc. 24 ¶ 6).

IV.   **Motion to Dismiss by Defendant Weber**

Germany alleges that he received inadequate medical treatment for his alleged injuries, in violation of his Eighth Amendment rights.  (Doc. 10).  As set forth above, to establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must establish that the defendant was subjectively deliberately indifferent to the plaintiff's objectively serious medical needs.  *Farmer*, 511 U.S. at 837; *Chavarriaga*, 806 F.3d at 226.  Because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation.  *White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990); *Estelle v. Gam*ble, 429 U.S. 97, 106 (1976) ("[M]edical malpractice does not become a constitutional violation merely because the victim is a prisoner.").  The Supreme Court has held that negligence or inadvertence alone do not rise to the level of a constitutional violation.  *Whitley v. Albers*, 475 U.S. 312 (1986).  The Supreme Court has also noted that "[l]ack of due care suggests no more than a failure to measure up to the conduct of a reasonable person."  *Daniels v. Williams*, 474 U.S. 327, 332 (1986).  Where a state of mind is relevant, the complaint is inadequate if it merely contains conclusory allegations describing the requisite state of mind such as "intentionally" or "recklessly" without supporting factual allegations.  *Wilson*, 501 U.S. 294.

Additionally, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, *see Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another

doctor is not actionable under the Eighth Amendment. *See White*, 897 F.2d at 108-10.

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical

treatment, standing alone, does not give rise to a viable Eighth Amendment claim. *See*

*Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a

physician exercises professional judgment his behavior will not violate a prisoner's

constitutional rights."); *Pearson v. Prison Health Servs.*, 850 F.3d 528, 535 (3d Cir. 2017)

("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper

absent evidence that it violates professional standards of care.").

A review of the complaint confirms that there is not a single factual averment relating

to Defendant Weber. (*See* Doc. 10). The only conclusory averment made against Weber is

that he is "the CEO of PrimeCare Medical who provides medical services to inmates at the

Dauphin County Prison."[4] (*Id.* at p. 6). Germany fails to identify the particular conduct of

this Defendant that is alleged to have violated his rights and fails to allege that he was

personally involved in his medical care. As stated *supra*, this style of pleading is wholly

inadequate since it fails to allege facts that give rise to a plausible claim for relief. *See*

*Hudson*, 244 F. App'x 519.

Moreover, it is clear that Germany received medical treatment for his injuries while

housed at the Dauphin County Prison. The Court concludes that Germany's allegations

---

[4]    The Court observes that Germany has not brought suit against PrimeCare Medical, Inc. under
a <u>Monell v. N.Y.C. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978) theory.

amount to, at most, a disagreement with the medical treatment. A showing of deliberate indifference requires more. *See Brown*, 903 F.2d at 278; *Pearson*, 850 F.3d at 535. Germany's own allegations provide that he received immediate medical attention after both of his falls, he was treated by prison medical personnel, was transported to an outside hospital for further treatment, underwent numerous tests, and was provided crutches, pain medication, and muscle ointment. Germany's dissatisfaction with his medical treatment decisions simply does not rise to a constitutional violation. The most that can be said of Germany's claim is that it asserts that the medical staff's professional judgment was deficient. As articulated above, this is not enough to rise to the level of a constitutional violation and courts will not second guess whether a particular course of treatment is adequate or proper. *See Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (quoting *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)); *Spruill*, 372 F.3d at 235 (holding that "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation). Moreover, there is no indication that the medical staff's actions were based on an ulterior motive beyond providing routine patient care. *See Spruill*, 372 F.3d at 237 (noting that in order to state a deliberate indifference claim, a plaintiff should in some way "connect[ ] his factual allegations to the alleged mental states" of the defendants). Accordingly, the Court will grant Defendant Weber's motion to dismiss the Eighth Amendment claim.

V.    **Leave to Amend**

When a complaint fails to present a prima facie case of liability, district courts must

generally grant leave to amend before dismissing the complaint.  *See Grayson v. Mayview*

*State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d

Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a

complaint is subject to dismissal for failure to state a claim, courts should liberally grant

leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515

F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  For the reasons set

forth above, Germany's claims are legally and factually flawed; thus, the Court concludes

that curative amendment would be futile.

VI.   **Conclusion**

The Court will grant Defendants' motions (Docs. 19, 21) to dismiss.  A separate

Order shall issue.


Robert D. Mariani
United States District Judge


Dated: February ⁄7, 2021